**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DONALD H. BRANDT, | § | No. 3:21-bk-31744-SHB |
| | § | Chapter 11 |
| Debtor. | § | |

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**
**PROPOSED BY FIRST NATIONAL BANK OF ONEIDA**

First National Bank of Oneida ("FNBO") submits this Disclosure Statement as provided by Bankruptcy Code § 1125. Simultaneous with the filing of this Disclosure Statement, FNBO has filed a Plan of Reorganization (this "Plan") which will be described in the Disclosure Statement. Terms defined in the Plan and not otherwise specifically defined in this Disclosure Statement will have the same meaning set forth in the Plan when used in this Disclosure Statement.

**BACKGROUND**

Donald H. Brandt (the "Debtor") filed this voluntary Chapter 11 case on November 5, 2021. The Debtor is an individual who owns, manages and rents approximately 49 single family homes and residential duplexes in Ohio, Tennessee, Arizona and Florida, in addition to a few commercial properties in Florida. In addition, the Debtor sells and develops raw land in Tennessee. The Debtor's secured debt consists of approximately $2,000,000 owed to his primary secured creditors, Peoples Bank, N.A. ("Peoples") and FNBO. Approximately $1,800,000 is owed to Charlotte State Bank, Wells Fargo Home Mortgage, Select Portfolio Servicing, Sam Niswonger, Peoples Bank of the South, Ron Wiley, PHH, and Dempsey Lumpkins & Miller, collectively, on real property. Debtor owes an approximate total of $88,000 to Kubota Credit on a tractor, Ford Credit on a truck, and a guaranty to TVA Credit Union on a truck. He also owes approximately $20,000 for real property taxes in Manatee County, Florida. He has additional unsecured debt of approximately $137,000.

The Debtor experienced severe cash flow problems for some time, resulting in the Debtor filing a voluntary Chapter 11 proceeding in the Middle District of Florida in 2009. That proceeding ultimately

was voluntarily dismissed by the Debtor on December 19, 2017 without receiving a discharge.  After that time, Debtor continued efforts to address his cash flow problems, but ultimately and largely he was unable to address his obligations to his primary secured creditors, Peoples and FNBO.  Debtor initiated the instant proceeding in late 2021 in order to obtain additional time to address the claims of his creditors and to avoid the loss of assets.

The Debtor has assets, predominantly real property, the value of which appears to well exceed his obligations.  As a result, FNBO believes that the Debtor can sell real property to satisfy his primary secured creditors, Peoples and FNBO, and to allow the Debtor to cash flow his remaining obligations. FNBO believes its proposed Plan will pay all his creditors.

## PROJECTED RECOVERY OF AVOIDABLE TRANSFERS

No preference, fraudulent conveyance or avoidance actions are planned.

## CLAIMS OBJECTIONS

The Debtor has stated he intends to object to the claims of Wells Fargo claims 20 and 21, NRZ Shellpoint claim 29, US Bank (PHH) claim 10.  The Debtor will make the monthly payments as set forth in the below chart addressing Class Three creditors. If the final number is different, the payment will be adjusted accordingly. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedure for resolving disputed claims is set forth in the proposed Plan.

## INCOME

The Debtor's sole sources of income are rental property income and social security.  The Debtor projects his monthly income (before taxes) to be as follows:

| | |
|---|---|
| Net Income from Rental Property | $6,062.00 |
| Social Security | $   560.00 |
| Total | $6,622.00 |

2

## ASSETS

The Debtors assets consist largely of real property.  The identity and estimated fair market value of the estate's real property assets are listed in Exhibit B to this Disclosure Statement.  The value of the real property is based upon the Debtor's filings in this matter.

## CLAIMS AND CLAIMS TREATMENT

The Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided in the Plan.

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired and such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, FNBO has not placed the following claims in any class:

**Administrative Expenses.**

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days prior to the date of the petition filing.  The Code requires that all administrative expenses be paid on the effective date of the Plan unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | n/a | n/a |

3

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| The Value of Goods Received in the Ordinary Course of Business within 20 Days Before the Petition Date | n/a | n/a |
| Professional Fees, as approved by the Court | estimated $50,000 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | n/a | Paid in full on the effective date of the Plan |
| Other administrative expenses | unknown | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the US Trustee Fees | unknown | Paid in full on the effective date of the Plan |
| TOTAL: | $50,000 | |

The following table summarizes the classification of the claims and interests that are required to be classified under the Bankruptcy Code and the treatment that the holders of such allowed claims or allowed interests will receive for such claims or interests:

| | Class | Estimated Claims | Proposed Treatment | Payment |
|---|---|---|---|---|
| 1 | **Taxing Authorities** | $20,000.00 | Unimpaired | In Full |
| 2 | **Foreclosing Creditors** | $2,100,000.00 | Impaired | In Full |
| 3 | **Regular Secured Creditors** | $2,200,000.00 | Impaired | In Full |
| 4 | **Unsecured Creditors** | $137,000.00 | Impaired | In Full |

There are four classes of creditors:

**Class One** is comprised of the claim of Manatee County, Florida for $20,000 in property taxes. This claim will be paid in full, with interest at an annual rate of 4 percent, in equal monthly installments over a period beginning April 1, 2022, and ending upon full satisfaction of the debt.

4

2196924v12

Class Two consists of Debtor's two major secured creditors, Peoples and FNBO. Class Two claims will be paid through the sale of real property upon which the members of Class Two have liens (the "Properties"). The proposed Plan describes the intended sale of real property in detail.

Upon the satisfaction of their respective liens in full through the sales of any or all of the Properties, Class Two members shall release their liens and no further sales will be required. Class Two Claims are as follows:

| Claim No. | Description | Insider | Impaired or Not Impaired | Treatment | |
|---|---|---|---|---|---|
| 15 | **First National Bank of Oneida**<br><br>Judgment lien recorded on all real property in Montgomery, Allen, Miami, and Darke Counties, Ohio, Campbell County, Tennessee, Pima County, Arizona, and Charlotte, Manatee, Sarasota, and Lee Counties Florida<br><br>Allowed secured amount: **$1,230,627.00** | No | Impaired | Treatment of Lien: Paid from Proceeds of sale, sale no later than 10/01/2022 | Retain lien |
| 16 | Secured claim of **First National Bank of Oneida**<br><br>Judgment lien recorded on all real property in Manatee, Charlotte, Lee, and Sarasota Counties, Florida<br><br>Allowed secured amount: **$181,161.00** | No | Impaired | Treatment of Lien: Paid from Proceeds of sale, sale no later than 10/01/2022 | Retain lien |
| 17 | **First National Bank of Oneida**<br><br>Judgment lien recorded on all real property in Manatee, Charlotte, Lee, and Sarasota Counties, Florida<br><br>Allowed secured amount: **$84,186.00** | No | Impaired | Treatment of Lien: Paid from Proceeds of sale, sale no later than 10/01/2022 | Retain lien |
| 30-34 | **Peoples Bank, N.A.**<br><br>Collateral Description: Duplexes in West Milton, OH<br><br>Allowed Secured Amount: $798,348.00 | No | Impaired | Monthly payment Begin date: Interest Rate: Treatment of Lien: Paid from Proceeds of sale, sale no later than 10/01/2022 | $5,500.00 02/07/2022 5/5% Retain lien |

5

**Class Three** consists of the regular secured creditors, i.e., secured creditors other than Peoples and FNBO.  The following chart lists Debtor's secured pre-petition claims and their proposed treatment under the Plan.  All creditors in Class Three will maintain the original term of the loan.  Class Three creditors are as follows:

| Claim No. | Description | Insider | Impaired or Not Impaired | Treatment | |
|---|---|---|---|---|---|
| | **Ron Wiley** Collateral Description: 3454 Hancock Bridge, B6 North Ft. Myers, FL Allowed secured amount: **$42,000.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $599.50 Current 6% Retain lien |
| | **Ron Wiley** Collateral Description: 2901 26th St., Apt. 214 Bradenton, FL Allowed secured amount: **$42,000.00** | No | Impaired | Payments: Begin Date: Interest Rate: Treatment of lien: | $599.50 Current 6% Retain lien |
| | Dempsey Lumpkins & Miller Collateral Description: 2 tracts, White Ln LaFollette, TN Secured amount: $16,000.00 | No | Impaired | Payments Begin Date Interest Rate | When sold 0% |
| 2 | **TVA Employees Credit Union** Collateral Description 2021 Silverado truck Allowed secured amount **$44,904.00** | No | Not Impaired | Guaranty of daughter's truck Payments begin: Interest rate: | Retain lien Daughter makes payment 2.99% |
| 3 | **Sam Niswonger** Collateral Description 471-473 Lyle West Milton, OH Allowed secured amount **$65,000.00** | No | Impaired | Land contract Payment Payments begin Interest Rate | $665.30 7-1-22 7% |
| 4 | **Charlotte State Bank** Collateral Description Office property in Port Charlotte, Florida Allowed secured amount: **$122,468.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien | $2,618.00 01/2022 5% Retain lien |

2196924v12

| Claim No. | Description | Insider | Impaired or Not Impaired | Treatment | |
|---|---|---|---|---|---|
| 6 | **Ford Credit** Collateral Description: 2021 F150 pickup truck  Allowed secured amount: **$17,409.00** | No | Impaired | Payments Begin Date Interest Rate | $371.73 Current 5.9% |
| 8 | **US Bank (PHH)** Collateral Description: 429 and 431 Lyle West Milton, Ohio  Allowed secured amount: **$174,707.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $887.66 7-1-22 6.0% Retain Arrearage tacked to end of term |
| 9 | **Peoples Bank of the South** Collateral Description: 4 lots at 351 White Lane LaFollette, TN  Allowed secured amount: **$119,395.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $1,800 Current 6.00% Retain Arrearage tacked to end of term |
| 10 | **Deutsche Bank (PHH)** Collateral Description: 437-439 Lyle West Milton, Ohio  Allowed secured amount: **$108,272.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $875.21 7-1-22 6.0% Retain Arrearage tacked to end of term |
| 11 | **Cole & Cole** Collateral Description: 202 W. 47th Ave, Unit 133 Bradenton, FL  Allowed secured amount: **$10,000.00** | No | Impaired | Treatment of Lien: Paid from Proceeds of sale. Sale no later than 10-1-22 if necessary | Retain lien |
| 12 | **US Bank c/o SPS** Collateral Description: 832 and 834 Comanche Tipp City, Ohio  Allowed secured amount: **$126,327.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $813.87 Current 4.625% Retain |

2196924v12

| Claim No. | Description | Insider | Impaired or Not Impaired | Treatment | |
|---|---|---|---|---|---|
| 13 | **Deutsche Bank (PHH)** Collateral Description: 4500 Mahler, Huber Heights, Ohio<br><br>Allowed secured amount: **$52,154.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien Sale no later than 10-1-22 if necessary | $518.66 Current 3.94% Retain |
| 14 | **Kubota Credit** Collateral Description: tractor and attachments<br><br>Allowed secured amount: **$28,088.00** | No | Impaired | Payments Begin Date Interest Rate | $355.44 Current 0% |
| 19 | **Wells Fargo Home Mortgage (PHH)** Collateral Description: 778-780 Commanche Tipp City, Ohio<br><br>Allowed secured amount: **$117,203.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien<br><br>Sale no later than 10-1-22 if necessary | $899.00 Current 3.57% Retain |
| 20 | **Wells Fargo Home Mortgage (PHH)** Collateral Description: Bradenton residence<br><br>Allowed secured amount: **$626,445.00** | No | Impaired | Payments Begin Date Interest Rate Treatment of Lien<br><br>Sale no later than 10-1-22 if necessary | $2,455.82 7-1-22 3.625% Retain Arrearage tacked to end of term |
| 21 | **Wells Fargo Home Mortgage (PHH)** Collateral Description: Duplex Units 3 and 4 Arcanum, Ohio<br><br>Allowed secured amount: **$102,008.00** | No | Impaired | Payments: Begin Date: Interest Rate: Treatment of Lien: Sale no later than 10-1-22 if necessary | $386.42 7-1-22 3.5% Retain Arrearage tacked to end of term |
| 22 | **Wells Fargo Home Mortgage (PHH)** Collateral Description: Duplex Units 1 and 2 Arcanum, Ohio<br><br>Allowed secured amount: **$61,612.00** | No | Impaired | Payments: Begin Date: Interest Rate: Treatment of Lien: Sale no later than 10-1-22 if necessary | $352.91 7-1-22 3.98% Retain |

2196924v12

| Claim No. | Description | Insider | Impaired or Not Impaired | Treatment | |
|---|---|---|---|---|---|
| 23 | **US Bank c/o Select Portfolio Servicing** Collateral Description: 786-788 Tipp City, Ohio<br><br>Allowed secured amount: **$134,106.00** | No | Impaired | Payments: Begin Date: Interest Rate: Treatment of Lien: Sale no later than 10-1-22 if necessary | $920.63 Current 4.625% Retain |
| 29 | **NRZ - Shellpoint** Collateral Description: 479-481 Lyle West Milton, Ohio<br><br>Allowed secured amount: **$116,497.00** | No | Impaired | Payments: Begin Date: Interest Rate: Treatment of Lien: Sale no later than 10-1-22 if necessary | $820.68 7-1-22 4.32% Retain Arrearage tacked to end of term |

**Class Four** are the unsecured claims. Class Four creditors shall receive 100 percent of their claim over five years following the confirmation date of the Plan. Payments shall be made in equal monthly installments of $2,283.00 on a pro rata basis. Alternatively, upon the sale of real property and after payment of secured creditors in order of priority and reasonable closing costs, if there should be any remaining proceeds from the sale, said balance shall be distributed to the unsecured creditors on a pro rata basis. However, if the Debtor fails to make two consecutive payments to any unsecured creditor, such creditor may immediately proceed to auction using the auction company identified as to the Class Two claims, above, for properties located in the same state, on any unencumbered property belonging to the Debtor, with payment of secured creditors in order of priority and after reasonable closing costs, until the Debtor's payments to such creditor are paid in full. Should the sale of all of the real estate not fully satisfy all creditors, no further payments will be made to any creditor and the Debtor shall be entitled to his discharge. Class Four creditors are:

2196924v12

| Creditor | Amount | Insider | Impaired or Not Impaired | Description |
|---|---|---|---|---|
| FNBO | $25,687 | No | Impaired | Federal Court Judgment |
| David Winchester, Esq. 1915 Old Jacksboro Pike La Follette TN 37766 | Unknown | No | Impaired | Legal Services |
| Fund Box 6900 Dallas Parkway, Suite 700 Plano TX 75024 | $8,925 | No | Impaired | Loan |
| R. John Cole, II, Esquire Cole & Cole Law, PA 46 N. Washington Blvd, Ste 24 Sarasota FL 34236 | $31,970.00 | No | Impaired | Legal Services – Partial Objection |
| Small Business Administration District Director 2 International Plaza Suite 500 Nashville TN 37217 | $14,900 | No | Impaired | COVID Loan |
| Mayer & Newton 1111 N. Northshore Drive Suite S-570 Knoxville, TN   37919 | $20,000 | No | Impaired | Legal Services |

| Creditor | Amount | Insider | Impaired or Not Impaired | Description |
|---|---|---|---|---|
| Amy C. Boohaker 1317 Edgewater Drive Suite 5775 Orlando, FL  32804-5775 | $22,544 | No | Impaired | Legal Services |
| Synchrony Bank c/o PRA Receivables P. O. Box 41031 Norfolk, VA  23541 | $584 | No | Impaired | Credit Card |
| Resurgent Capital Services | $10,851 | No | Impaired | Credit Card |
| Kubota Credit Corporation | $1,944 | No | Impaired | Purchase of Tractor |

## OTHER POTENTIAL CLAIMANTS

Melissa Terrazas has alleged that she is owed money by the Debtor. Ms. Terrazas' claim was listed in the Debtor's schedules as disputed. She has failed to file a proof of claim per 11 U.S.C. 1111(a), so no payment will be made to her.

Zachary Gravelle has not only alleged that he is owed money by Debtor, but has filed, released, and refiled purported mechanic's liens on real property of the Debtor. Mr. Gravelle's claim was listed in the bankruptcy schedules as disputed. He has failed to file a proof of claim per 11 U.S.C. 1111(a) and has failed to file any action in support of his liens filed, so no payment will be made to him.

## RISK FACTORS

The proposed Plan has the following risks:

2196924v12

Inability to sell properties for amounts that satisfy creditors; inability to retain paying tenants in any remaining rental properties.

## EXECUTORY CONTRACTS

All executory contracts, including those land contracts concerning the tracts on White Lane in Campbell County, are rejected as of the date of confirmation of the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

The Debtor shall retain his interests in all of the remaining real property following confirmation subject only to the claims of any secured creditors who shall retain their liens until paid in full.

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for the confirmation are not met. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Debtor shall make and file a Final Decree within 45 days of confirmation. Pending confirmation of any plan by the Court, the Debtor shall escrow all proposed monthly payments to creditors, commencing with the October 2022 payments, by September 30, 2022. Within five days of the Order confirming this Plan, the Debtor shall distribute the accumulated payments to respective creditors. In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee until a Final Decree is entered. The fee amounts shall be in compliance with 28 U.S.C. §1930(a)(6) and the Local Rules of the U.S. Bankruptcy Court of the Eastern District of Tennessee. The Debtor shall have no

2196924v12

obligation to any unsecured creditor unless a creditor has filed a proof of claim to which the

Debtor has not filed an objection by June 30, 2022, or the creditor is listed in its respective

class herein and does not have unknown or objection marked next to the claim.

Should there be a default under the payments scheduled in the Plan to any creditor(s), that

creditor(s) may pursue its remedies at law without the necessity of seeking any type of relief in

the bankruptcy court.

In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United

States Trustee until the case is administratively closed. The fee amount shall be in compliance

with 28 U.S.C. §1930(a)(6) and the Local Rules of the U.S. Bankruptcy Court of the Eastern

District of Tennessee. The fee shall be payable on the last day of the calendar month following

the calendar quarter for which the fee is owed. The only requirements that will need to be

satisfied before the Debtor can file a motion to administratively close the case shall be:

1.      Confirmation Order has become final.

2.      Payments proposed under the Plan have commenced and been paid.

3.      There are no pending Motions, contested matters, or adversary proceedings.

4.      All U.S. Trustee quarterly fees have been paid.

This Court shall retain jurisdiction over any and all matters arising from and/or under

this plan including, but not limited to, any claims objections, equitable subordination claims,

avoidance actions and subrogation claims as set out above. No statements or information

concerning the Debtor or his assets or securities are authorized other than those set forth in the

Disclosure Statement or any amendments thereto.

It is anticipated that total professional fees for the Debtor will not exceed $50,000.00,

which will consist of attorney fees and accounting fees. These fees will be paid only after

13

application to and approval by the Court. Any professional fees unpaid after approval by the Court shall be paid in equal installments of not greater than $2,500.00 monthly until paid in full. The U.S. Trustee fees will be paid in full as they become due. To the extent that there are any outstanding U.S. Trustee fees, they shall be paid in full upon confirmation and the Debtor shall not be entitled to administratively close the case until such time as all outstanding U.S. Trustee fees are paid in full.

## TAX CONSEQUENCES OF PLAN

Creditors and Equity Interest Holders Concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

The following are the anticipated tax consequences of the Plan: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.

Debtor may incur capital gains tax on some of the sales involved.   No tax consequences to creditors and no general tax consequences are anticipated.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

14

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject a Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Classes 2 through 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that Class 1 is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    What is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was March 7, 2022.

### 2.    What is an Impaired Claim or Impaired Equity Interest?

15

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in §1124 of the Code, as class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    Who is Not Entitled to Vote?

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### VOTES NECESSARY TO CONFIRM THE PLAN

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders

2196924v12

within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section 2.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

You should consult your attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

### BEST INTERESTS OF CREDITORS TEST

Pursuant to § 1129(a)(7) of the Bankruptcy Code each holder of an allowed claim must either (1) accept the Plan or (2) receive or retain under the Plan property of a value, as of the

2196924v12

assumed effective date of the Plan, that is not less than the value such non-accepting holder would receive or retain if this case were to be liquidated under chapter 7 of the Bankruptcy Code.  In determining whether the best interests test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets under Chapter 7.

The table below contains a liquidation analysis.  The liquidation analysis reflects the estimated cash proceeds, net of liquidation related costs, that would be available to creditors if the Debtor were to be liquidated pursuant to Chapter 7 of the Bankruptcy Code.  Therefore, asset values may be different than amounts referred to elsewhere in this Disclosure Statement and Plan.

A description of the Debtor's current assets and liabilities are listed and itemized in Exhibit B attached to this Disclosure Statement.  No recent appraisals have been made for the purposes of this Disclosure Statement.  The values disclosed are based upon filings by the Debtor and estimates of liquidation costs by FNBO.  FNBO believes that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

The liquidation analysis assumes that the liquidation would be completed by a Chapter 7 bankruptcy trustee during a 4-month period, during which time all of the Debtor's nonexempt and unencumbered assets would be sold and initial distributions to creditors would be made, net of liquidation-related expenses.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge Of Debtor

2196924v12

The Debtor will be discharged as provided under Section 1141(d)(5) from all claims only upon completion of the Plan payments. Section 1141(d)(5)(A) allows for an exception to the general rule "after notice and a hearing" and if the court finds "cause". The debtor will retain his ownership of exempt property. Debtor will not be discharged from any debt excepted from discharge under Subsection 523 of the Code, except as provided in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure.

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request by the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case, Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted this 13th day of September, 2022.

2196924v12

*/s/Cheryl G. Rice*
Cheryl G. Rice, BPR #21145
EGERTON, MCAFEE, ARMISTEAD & DAVIS, P.C.
Riverview Tower 14th Floor
900 S. Gay Street
Knoxville, TN  37902
(865) 546-0500
(865) 525-5293 (fax)
crice@emlaw.com
*Counsel for First National Bank of Oneida, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2022, a copy of the foregoing Disclosure Statement For Plan Of Reorganization Proposed By First National Bank of Oneida was filed electronically.  Notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other interest parties and creditors on the attached mailing matrix will be served by regular U.S. Mail on the same date.  Parties may access this filing through the Court's electronic filing system.

*Cheryl G. Rice*
Cheryl G. Rice, Esq.

20

2196924v12

Zachary Gravelle
5519 Mallard Walk
Gainesville, GA 30504

America's Servicing Company
c/o McCalla Raymar, LLC
Bankruptcy Dept.
1544 Old Alabama Road
Roswell, GA 30076-2102

Grosch Quality Water, Inc.
c/o Credit Care
112 Dowell Ave.
Bellefontaine, OH 43311

Andrew Johnston, Esquire
215 W. Water Street
Troy, OH 45373

Bank of America National Assoc.
P. O. Box 25118
Tampa, FL 33622-5118

Barclays Capital Real Estate, Inc.
1100 Corporate Center Drive
ATTN: Bankruptcy Dept, Mail Code 4743
Raleigh, NC 27607-5066

Campbell County Trustee
P. O. Box 72
Jacksboro, TN 37757

Christopher Mat Hittel, Esquire
Ryan Hittel, Esquire
333 Sixth Ave. West
Bradenton, FL 34205

Clerk & Master's Office
PO Box 182
Jacksboro, TN 37757-0182

Colby Perotti
351 White Lane
La Follette, TN 37766

David Winchester, Esquire
P. O. Box 1733
La Follette, TN 37766

Jonathan D. Crick, Esq.
Scovanner & Whittaker, CPA
2425 Manatee Ave., West
Bradenton, FL 34205-4933

Dempsey Lumpkins & Miller
PO Box 423
La Follette, TN 37766-0423

Deutsche Bank National Trust Co.
Brock & Scott, PLLC
c/o Frederic J. DiSpigna, Esq.
2001 NW 64th St., Suite 130
Fort Lauderdale, FL 33309-3723

First Nat'l Bank of Oneida
c/o Hyel Leonard
PO Box 3239
Tampa, FL 33601-3239

Fund Box
6900 Dallas Parkway
Suite 700
Plano, TX 75024

J.P. Morgan Chase, servicing agent
c/o Tennille M. Shipwash, Esq.
Greenspoon Marder, P.A.
100 Cypress Creek Road, Suite 700
Fort Lauderdale, FL 33309-2181

John Cole Attorney
46 N. Washington Blvd
Ste 24
Sarasota, FL 34236

Ben Cunningham
Asst. U.S. Attorney
800 Market Street, Suite 211
Knoxville, TN 37902

Kimberly J. Piros
c/o Ameesh Kherani, Esq.
116 Cumberland Ave, Suite 3
Jacksboro, TN 37757

Kubota Credit
PO Box 0559
Carol Stream, IL 60132-0559

Law Office of Amy C. Boohaker, PA
PO Box 2098
Palmetto, FL 34220-2098

Lee County Tax Collector
PO Box 1609
Fort Myers, FL 33902-1609

Matthew and Brandi Schiller
5511 Detrick Jordan Pike
Springfield, OH 45502

Mayer & Newton
1111 N. Northshore Dr., Ste. S-570
Knoxville, TN 37919

Mayersohn Law Group, P.A.
101 N.E. Third Avenue #1250 Fort
Lauderdale, FL 33301

Melissa Terrazas
5519 Mallard Walk
Gainesville, GA 30504

Ocwen Loan Servicing, Inc.
c/o Anila Rasul, Esq.
6409 Congress Ave., Suite 100
Boca Raton, FL 33487-2853

Ocwen Loan Servicing, Inc.
Attn: Bankruptcy Department
P. O. Box 24605
West Palm Beach, FL 33416-4605

Ocwen Loan Servicing, LLC
ATTN: Cashiering Department
P. O. Box 24781
West Palm Beach, FL 33416-4781

Ocwen Loan Servicing, LLC
c/o Margaret E. Kepler, Esquire
Baker Donelson
100 SE Third Ave, Ste. 1620
Fort Lauderdale, FL 33394-0048

Oral Miller
815 W. Rhoten Street
Jefferson City, TN 37760-1626

Peoples Bank of the South
PO Box 1221
La Follette, TN 37766

Peoples Bank, NA
c/o Keri P. Ebeck, Esq.
601 Grant Street, 9th Floor
Pittsburg, PA 15219

R. John Cole, II, Esquire
Cole & Cole Law, PA
46 N. Washington Blvd, Ste 24
Sarasota, FL 34236

Ron Wiley
5189 E. Mount Morris Road
Mount Morris, MI 48458

Sam Niswonger
3176 Ditmer Road
Laura, OH 45337

Small Business Administration
District Director
2 International Plaza, Suite 500
Nashville, TN 37217

Sunset Capital
639 14th Ave. S.
Saint Petersburg, FL 33701

Wells Fargo
c/o Angela D. Kirk
PO Box 165028
Columbus, OH 43216

Wells Fargo Home Mortgage
c/o Wells Fargo Bank
100 Ashley Dr. S.
Tampa, FL 33602

Kathy Jade
c/o Jason Rogers, Esq.
P. O. Box 869
Knoxville, TN 37901

2196924v12

# EXHIBIT A

## REAL PROPERTY ASSETS

| |
|---|
| 3454 Hancock Bridge Parkway, B6, North Fort Myers, FL 33903, Lee County |
| 2586 Tamiami Trail, Units A&B, Port Charlotte FL 33952, Charlotte County |
| 2901 26th Street W. Apt. 214, Bradenton, FL 34205, Manatee County |
| 207 47th Ave Dr. W. Apt. 214, Bradenton, FL 34207, Manatee County |
| 2407 Palma Sol Blvd., Bradenton, FL 34209, Manatee County |
| 55 acres and home 420 Brandt Hill Lane, La Follette, TN 37766, Campbell County |
| Tract 1 & 2 , 351 White Lane, La Follette, TN 37766, Campbell County |
| Tract 3, 351 White Lane, La Follette, TN 37766, Campbell County |
| 50 acres with marina rights 456 Powder Mill, La Follette, TN 37766 Campbell County |
| 5 acres, Alder Springs, La Follette, TN 37766. Campbell County |
| House at 1384 Pinecrest, Jacksboro TN 37757, Campbell County |
| House at 306 S. Cumberland, La Follette, TN 37766, Campbell County |
| House at 511 E Hemlock, La Follette, TN 37766, Campbell County |
| 7 tracts of land (68.67 acres) at Saddle Buck Estates, La Follette, TN 37766, Campbell County |
| House at 416 Via Alamos, Green Valley, AZ |
| 21-23 Teri Drive, West Milton, OH |
| 27-29 Woods Drive, West Milton, OH |
| 338-340 Hasket Drive, West Milton, OH 45383 |
| 778-780 Comanche, Tipp City, OH |
| 484-486 Lyle, West Milton, OH |
| 41-43 Teri Drive, West Milton, OH |
| 476-478 Lyle, West Milton, OH |
| 429-431 Lyle, West Milton, OH |
| 437-439 Lyle, West Milton, OH |
| 479-481 Lyle, West Milton, OH |
| 471-473 Lyle, West Milton, OH |
| 487-489 Lyle, West Milton, OH |
| 495-497 Lyle, West Milton, OH |
| 60% owner of 36-38 Teri Drive, West Milton, OH |
| 786-788 Comanche, Tipp City, OH |
| 832-834 Comanche, Tipp City, OH |
| Units 1&2, 3664 State Rt. 49, Arcanum, OH |
| Units 3&4, 3656 State Rt. 49, Arcanum, OH |
| 4500 Mahler Drive, Dayton, OH |
| 1037-1039 Cameron Lane, Lima, OH |
| 1030-1031 Cameron Lane, Lima, OH |
| 1021-1023 Cameron Lane, Lima, OH |
| 6779-6781 Jaysville, Greenville, OH |
| 6787-6789 Jaysville, Greenville, OH |
| Timeshare, Week #22, Parcel Unit #107, Longboat Key, FL |

2196924v12

## EXHIBIT B

## LIQUIDATION ANALYSIS*

| ASSET | FMV** | EXEMPT | SECURED**** | LIQUIDATION VALUE*** |
|---|---|---|---|---|
| 3454 Hancock Bridge Parkway, B6, North Fort Myers, FL 33903, Lee County | $125,000 | | $42,000 (Ron Wiley) | $58,000 |
| 2586 Tamiami Trail, Units A&B, Port Charlotte FL 33952, Charlotte County | $650,000 | | $122,468 (Charlotte State Bank & Trust) | $397,532 |
| 2901 26th Street W. Apt. 214, Bradenton, FL 34205, Manatee County | $125,000 | | $42,000 (Ron Wiley) | $58,000 |
| 207 47th Ave Dr. W. Apt. 214, Bradenton, FL 34207, Manatee County | $65,000 | | $10,000 (Cole & Cole Law) | $42,000 |
| 2407 Palma Sol Blvd., Bradenton, FL 34209, Manatee County | $799,000 | | $626,445 (Wells Fargo Bank, NA) | $12,755 |
| 55 acres and home 420 Brandt Hill Lane, La Follette, TN 37766, Campbell County | $900,000 | $12,500 | | $710,000 |
| Tract 1 & 2 , 351 White Lane, La Follette, TN 37766, Campbell County | $350,000 | | $16,000 (Dempsey Lumpkins & Miller, as to Tracts 1 and 2 only) <br><br> $119,395.30 (Peoples Bank of the South, as to all White Lane tracts) | $204,302.35 |
| Tract 3, 351 White Lane, La Follette, TN 37766, Campbell County | $78,000 | | | $2,702.25 |
| 50 acres with marina rights 456 Powder Mill, La Follette, TN 37766 Campbell County | $1,500,000 | | | $1,200,000 |
| 5 acres, Alder Springs, La Follette, TN 37766. Campbell County | $100,000 | | | $80,000 |

| ASSET | FMV** | EXEMPT | SECURED**** | LIQUIDATION VALUE*** |
|---|---|---|---|---|
| House at 1384 Pinecrest, Jacksboro TN 37757, Campbell County | $85,000 | | | $68,000 |
| House at 306 S. Cumberland, La Follette, TN 37766, Campbell County | $75,000 | | | $60,000 |
| House at 511 E Hemlock, La Follette, TN 37766, Campbell County | $100,000 | | | $80,000 |
| 7 tracts of land (68.67 acres) at Saddle Buck Estates, La Follette, TN 37766, Campbell County | $639,500 | | | $511,600 |
| House at 416 Via Alamos, Green Valley, AZ | $200,000 | | | $160,000 |
| 21-23 Teri Drive, West Milton, OH | $155,000 | | $179,816 (Peoples) | $34,092 |
| 27-29 Woods Drive, West Milton, OH | $165,000 | | | $42,092 |
| 338-340 Hasket Drive, West Milton, OH 45383 | $155,000 | | $78,783 (Peoples, as to both properties) | $84,608.50 |
| 778-780 Comanche, Tipp City, OH | $185,000 | | $117,203 (Wells Fargo, as to 778-780 Comanche only) | $0 |
| 484-486 Lyle, West Milton, OH | $155,000 | | $177,613 (Peoples) | $35,193.50 |
| 41-43 Teri Drive, West Milton, OH | $155,000 | | | $35,193.50 |
| 476-478 Lyle, West Milton, OH | $155,000 | | | $34,986 |
| 487-489 Lyle, West Milton, OH | $155,000 | | $184,109 (Peoples) | $31,945.50 |
| 495-497 Lyle, West Milton, OH | $155,000 | | | $31,945.50 |
| 429-431 Lyle, West Milton, OH | $155,000 | | $174,707 (US Bank Nat'l Assoc) | $0 |
| 437-439 Lyle, West Milton, OH | $165,000 | | $108,272 (Deutsche Bank Nat'l Trust) | $24,052 |
| 479-481 Lyle, West Milton, OH | $155,000 | | | $124,000 |

25

| ASSET | FMV** | EXEMPT | SECURED**** | LIQUIDATION VALUE*** |
|---|---|---|---|---|
| 471-473 Lyle, West Milton, OH | $155,000 | | $65,000 (Sam Niswonger) | $59,000 |
| 60% owner of 36-38 Teri Drive, West Milton, OH | $93,000 (of $155,000) | | | $74,400 |
| 786-788 Comanche, Tipp City, OH | $185,000 | | $134,106 (US Bank N.A.) | $13,894 |
| 832-834 Comanche, Tipp City, OH | $175,000 | | $126,327 (US Bank N.A.) | $13,831 |
| Units 1&2, 3664 State Rt. 49, Arcanum, OH | $139,000 | | $61,612 (Wells Fargo Bank NA) | $49,588 |
| Units 3&4, 3656 State Rt. 49, Arcanum, OH | $135,000 | | $102,008 (Wells Fargo Bank NA) | $5,992 |
| 4500 Mahler Drive, Dayton, OH | $95,000 | | $52,154 (Deutsche Bank Nat'l Trust Company) | $23,846 |
| 1037-1039 Cameron Lane, Lima, OH | $142,000 | | | $113,600 |
| 1030-1031 Cameron Lane, Lima, OH | $142,000 | | | 113,600 |
| 1021-1023 Cameron Lane, Lima, OH | $165,000 | | | $132,000 |
| 6779-6781 Jaysville, Greenville, OH | $139,000 | | | $111,200 |
| 6787-6789 Jaysville, Greenville, OH | $139,000 | | | $111,200 |
| Timeshare, Week #22, Parcel Unit #107, Longboat Key, FL | $7,500 | | | $6,000 |
| 2021 Ford Pickup | $55,000 | | | $44,000 |
| Kubota Tractor | $35,000 | | $26,144 | $1,856 |
| 2005 Mercedes SLK 55 | $7,000 | | | $5,600 |
| Clothing | $300 | $300 | | $0 |
| Breitling Wrist Watch | $1,000 | $1,000 | | $0 |
| Electronics | $1,500 | $500 | | $800 |
| Household Goods and Furnishings | $5,500 | | | $4,400 |
| Money Deposits | $35,103 | $10,000 | | $25,103 |
| 100% Interest in BCI Corporation | $50,000 | | | $40,000 |
| Crazy Freddy's Business Venture | $29,700 | | | $23,760 |
| Claims Against Third Parties | $148,300 | | | $74,150 |
| Office Equipment | $1,000 | $1,000 | | $0 |

*FNBO has judgment liens totaling approximately $1,496,000 secured by all real property of Debtor. FNBO's liens are junior to People's liens and other first-priority liens on the properties. Accordingly, the first $1,496,000 of "Liquidated Value" shall go to FNBO instead of the unsecured creditors.

**FNBO is relying on the stated value of the assets in the Debtor's schedules for the fair market value.

***FNBO estimates that the costs of liquidation would not exceed 20 percent of the value of each asset, other than Claims Against Third Parties, which costs of liquidation likely would not exceed 50 percent of the value of the claims. Thus, FNBO estimates the liquidation value of each asset other than Claims Against Third Parties to be 80 percent of the value stated by the Debtor, less any secured amount. Exemptions were subtracted from the fair market value of each asset before subtracting the 20 percent cost of liquidation. Claims Against Third Parties are valued at 50 percent of the value stated by Debtor. This Analysis does not factor in any adequate protection payments that have been made to date.

****FNBO is relying solely on the Debtor's disclosures and the proofs of claim filed for these statement that these debts are secured and for the values represented herein.

2196924v12

**EXHIBIT C**

**Monthly Operating Report**

28

**EXHIBIT D**

**HISTORICAL AND PROJECTED INCOME**

The Debtor's latest monthly operating report is attached as Exhibit C to this Disclosure Statement.  It discloses the Debtor's income and expenses since the petition date, November 5, 2021. Upon sale of the properties pursuant to the proposed Plan, the Debtor's monthly income (net of income tax) will consist primarily of Social Security payments of $580.00 per month. The Debtor may receive additional income if, after satisfaction of his debts to creditors by sale of all necessary properties pursuant to the Plan, the Debtor retains some properties to rent.

2196924v12