**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

DONALD H. BRANDT

        Debtor

Case No. 3:21-bk-31744-SHB
Chapter 13

**MEMORANDUM ON AMENDED OBJECTION
BY DEBTOR TO CLAIMS NUMBER 15-2, 16, 17, AND 18
FILED BY FIRST NATIONAL BANK OF ONEIDA, N.A.**

**APPEARANCES:**    TARPY, COX, FLEISHMAN & LEVEILLE, PLLC
    Edward J. Schultz, Esq.
    1111 N. Northshore Drive
    Suite N-290
    Knoxville, Tennessee  37919
    Attorneys for Debtor

    EGERTON, MCAFEE, ARMISTEAD & DAVIS, P.C.
    Cheryl G. Rice, Esq.
    Riverview Tower 14th Floor
    900 S. Gay Street
    Knoxville, Tennessee  37902
    Attorneys for First National Bank of Oneida, N.A.

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the Court on the Amended Objection by Debtor to Claim Number[s] 15-2, 16, 17, and 18 Filed by First National Bank of Oneida, N.A. ("Claims Objection") filed on August 29, 2024 [Doc. 833], and the Response filed by First National Bank of Oneida, N.A. ("the Bank") on October 8, 2024 [Doc. 847]. After a status hearing was held on February 20, 2025, the Court entered an Order directing the parties to file briefs concerning their respective positions.

As directed by that Order, Debtor filed his brief on March 28, 2025 [Doc. 908], together with the following exhibits:

(A) Judgment in the amount of $1,227,712.95 entered by the United States District Court for the Middle District of Florida on February 25, 2020, in Case No. 8:16-cv-51-T-AAS ("February 2020 Judgment");

(B) Judgment in the amount of $180,000.00 entered by the United States District Court for the Middle District of Florida on March 28, 2017, in Case No. 8:16-cv-51-T-17MAP ("March 2017 Judgment");

(C) Judgment in the amount of $84,000.00 entered by the United States District Court for the Middle District of Florida on April 7, 2020, in Case No. 8:16-cv-51-T-AAS ("April 2020 Judgment"); and

(D) a "Summary of Costs of Collection Not Included in Judgment Awarded" that was attached to Claim #15. [Docs. 908-2 through 908-5.]

The Bank filed its brief on April 18, 2025 [Doc. 910], together with the following collective exhibits:

(A) Promissory Notes (and renewals and modifications thereto) between Debtor and the Bank dated September 24, 2007 ($500,000.00); September 24, 2007

($500,000.00); May 30, 2008 ($30,631.43); June 23, 2008 ($41,375.94); June 23, 2008 ($179,748.57); June 24, 2008 ($255,315.31); December 21, 2008 ($212,852.12); December 24, 2008 ($502,000.00); and February 11, 2009 ($10,040.52);[1]

(B) Deeds of Trust recorded with the Campbell County Register of Deeds on September 26, 2007 ($500,000.00 indebtedness); May 9, 2008 ($28,742.70 indebtedness); June 3, 2008 ($30,631.43 indebtedness); June 9, 2008 ($30,667.43 indebtedness); June 13, 2008 ($152,240.78 indebtedness); June 25, 2008 ($179,748.57 indebtedness); June 25, 2008 ($41,375.94 indebtedness); June 25, 2008 ($255,315.31 indebtedness); and July 29, 2008 ($141,991.00 indebtedness);[2]

(C) Loan Agreements between Debtor and the Bank dated May 5, 2008; June 4, 2008; June 13, 2008; July 25, 2008; December 10, 2008; and January 25, 2009;[3]

(D) Stipulation to Amount of Judgment dated March 27, 2017, and the March 2017 Judgment;

(E) Memorandum Order entered February 24, 2020, and the February 2020 Judgment;

(F) Memorandum Order entered April 7, 2020, and the April 2020 Judgment; and

(G) Order entered July 8, 2021, in Case No. 8:16-cv-51-AAS, United States District Court for the Middle District of Florida, granting the Bank a judgment for its appellate attorneys' fees in the amount of $25,675.77 ("July 2021 Judgment").

Although the February 20 Order provided Debtor the opportunity to file a reply brief no later

---

[1] The Court will refer to these documents collectively as "the Notes."

[2] The Court will refer to these documents collectively as "the Deeds of Trust."

[3] The Court will refer to these documents collectively as "the Loan Agreements." Further, the Court will refer to the Notes, Deeds of Trust, and Loan Agreements collectively as "the Underlying Loan Documents."

than April 28, 2025, he did not file one.

In his brief, Debtor clarifies that his "sole objection is to the postjudgment, pre and postpetition expenses contained" in the Bank's Claim No. 15. [Doc. 908 at 2.] He acknowledges that he "does not object to the debts underlying the Florida judgments [or] . . . the Bank's claim of interest at the federal judgment rate in effect at the time the judgments were issued." [*Id.*] Thus, the only issue before the Court is the post-judgment, prepetition and postpetition expenses, which include attorneys' fees, as shown in Claim No. 15-2 (as amended in Claim No. 15-3[4]). Debtor, however, expressly reserved his right to object to the reasonableness of any fees that the Court deems are allowed as a matter of law. [*Id.* at 1.]

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## I.  FACTS[5]

Between 2007 and 2009, Debtor entered into several loans with the Bank secured by real property, as evidenced by the associated Notes, Loan Agreements, and Deeds of Trust. [Doc. 910-1; 910-2.] Each of the Notes included the following provisions concerning collection expenses in the event of default:

> **COLLECTION COSTS AND ATTORNEY'S FEES** – I agree to pay all costs of collection, replevin or any other or similar type of costs if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

---

[4] The expenses "after 7/31/2021" that were included in Claim No. 15 increased from $115,451.29 in the Bank's first amendment [Claim No. 15-2 at 55 (May 22, 2024)] to $117,907.79 in the second amendment [Claim No. 15-3 Part 5 (Att. 4) at 2 (Oct. 1, 2024)]. The only expense that increased between the two amendments was the attorneys' fees (labeled as "EMAD(BRANDT)"). The Bank's claim does not delineate between pre- and postpetition expenses, although presumably some of the expenses were incurred prepetition between July 31, 2021, and the petition date of November 5, 2021.

[5] The parties did not officially "stipulate" to the following facts, but their filings reflect that these facts are undisputed.

[Doc. 910-1 at 4, 6, 8, 13, 15, 17, 19-20, 22.]

Similar language was included in the Loan Agreements dated May 5, 2008; June 4, 2008; June 13, 2008; July 25, 2008; and January 25, 2009:

> **Collection Expenses and Attorneys' Fees**. On or after Default, to the extent permitted by law, I agree to pay all reasonable and actual expenses of collection, enforcement, or protection of your rights and remedies under this Loan Agreement. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the rate provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

[Doc. 910-3 at 5, 8, 11, 16, 20.] Likewise, under the Remedies section, the Consumer Security Agreement dated July 25, 2008, states the following:

> If you repossess the Property, you may keep or dispose of the Property as provided by law. You may apply the proceeds of any disposition first to your expenses of collection and enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Unless prohibited by law, and following any required explanation of deficiency, I (or Borrower, if not the same) will be liable for the deficiency if what you receive from the sale does not satisfy the Secured Debts.

[Doc. 910-3 at 14.] Finally, each Deed of Trust includes the following provision:

> **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

[Doc. 910-2 at 4, 12, 21, 26, 33, 41, 48, 58, 71.]

On July 27, 2009, Debtor filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida ("Florida Bankruptcy Case"). [Doc. 910 at 2.] The Bank was a secured creditor in the Florida Bankruptcy Case. [*Id*.] Under the terms of his confirmed Chapter 11 plan, Debtor issued an additional note that was secured by additional real property to pay the Bank's unpaid postpetition interest ("Plan Note"). [*Id*. at 2-3.] When Debtor failed to comply with the terms of his confirmed Chapter 11 plan as it related to the Bank, the Bank obtained stay relief to exercise its *in rem* rights against the properties securing its claims. [*Id*. at 3.] After it foreclosed the properties that secured the Notes and Loan Agreements through the Deeds of Trust and applied the proceeds against the debt owed, the Bank again obtained stay relief to pursue the deficiency balance under the Notes and the Plan Note, filing Civil Action No. 8:16-cv-51 against Debtor in the United States District Court for the Middle District of Florida ("USDC Case"). [*Id*.]

The Bank obtained a stipulated March 2017 Judgment in the USDC Case against Debtor in the amount of $180,000.00 to resolve the outstanding Plan Note balance. [*Id*.; Docs. 908-2; 910-4; *see* Doc. 908 at 1.] The district court also granted summary judgment to the Bank for the deficiency balance under the Notes, entering the February 2020 Judgment against Debtor in the amount of $1,227,712.95. [Doc. 910 at 4; Docs. 908-1; 910-5; *see* Doc. 908 at 1.]. The memorandum opinion granting summary judgment expressly stated that the Bank "may separately move for reasonable attorney's fees and costs." [Doc. 910-5 at 10; *see also* Docs. 908-1; 910 at 4.] In response to the Bank's request for pre-judgment attorney's fees and costs under the Notes, the district court entered the April 2020 Judgment in the amount of $84,000.00. [Doc. 910 at 4; Docs. 908-3; 910-6; *see* Doc. 908 at 1.] Debtor unsuccessfully appealed the February 2020 Judgment. The district court then granted the Bank's unopposed motion for attorneys' fees

relating to the appeal, entering the July 2021 Judgment in the amount of $25,675.77. [Doc. 910 at 4; Doc. 910-7.][6]

None of the Judgments expressly authorized additional post-judgment attorneys' fees, costs, or expenses. [Doc. 908 at 2; *see* Docs. 908-2; 910-4; 908-1; 910-5; 908-3; 910-6.] Because Debtor owned real property in numerous states, the Bank recorded the Judgments in various counties in Tennessee, Florida, Ohio, and Arizona where Debtor owned property, thereby obtaining involuntary judgment liens on Debtor's properties in those locations, as authorized by those states' statutes. [Doc. 910 at 4.]

Before the Bank could foreclose on its judgment liens, Debtor filed the Voluntary Petition commencing this case under Chapter 11 on November 5, 2021.[7] [Doc. 908 at 1; Doc. 910 at 4.] On January 11, 2022, the Bank filed three secured proofs of claim in this case, only one of which remains the subject of the Claims Objection: Claim No. 15 in the amount of $1,230,627.84, which was amended to $1,346,079.13 on May 22, 2024, and to $153,983.17[8] on October 1, 2024. Further, Debtor's only objection to Claim No. 15 is to the expenses that now total $117,907.79. [Doc. 908 at 2; Claim No. 15-3 Part 5 (Att. 4) at 2.]

Debtor argues that the Bank improperly included in its claim post-judgment, prepetition expenses (including attorneys' fees) and postpetition expenses (including attorneys' fees). First,

---

[6] The March 2017 Judgment, the February 2020 Judgment, and the April 2020 Judgment are collectively referred to as the "Judgments."

[7] The case was converted to Chapter 7 on October 19, 2023, and Debtor received a discharge on May 31, 2024. [*See* Doc. 908 at 1; Doc. 910 at 6.] Because it is a surplus-asset case, Debtor has standing to pursue his Claims Objection.

[8] Claim No. 15-3 was reduced to credit the payments made from various sales of property through the bankruptcy case. The originally filed claim included post-judgment interest through the November 5, 2021 petition date of $2,914.89. Through the first amendment to Claim No. 15, the Bank added $115,451.29 for attorneys' fees and expenses, which increased to a total of $117,907.79 for attorneys' fees and expenses as reflected by the second amendment to Claim No. 15.

Debtor asserts that under 11 U.S.C. § 506(b) and *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), because the Bank's claim is secured by an involuntary judgment lien, the Bank may not rely on the provisions of the Underlying Loan Documents to recover post-judgment, postpetition attorneys' fees and expenses. Debtor also argues that the Bank is precluded by the doctrine of merger from adding post-judgment, prepetition expenses to the Judgments. [Doc. 908 at 3-5.]

In opposition, the Bank argues that Debtor has interpreted the merger doctrine too narrowly and that the Underlying Loan Documents entitle the Bank to reimbursement of all expenses incurred while protecting and enforcing its rights, including its post-judgment expenses both before and after Debtor filed his bankruptcy petition. [Doc. 910 at 8-9.] In response to Debtor's merger-doctrine argument, the Bank argues that even if the doctrine applies, equitable exceptions to its application exist because the fees and costs are "ancillary" to the original lawsuit; Debtor is estopped from opposing the Bank's claims by his post-judgment conduct; the Bank's secured status arises not only from the judgment liens but also from the Underlying Loan Documents on which the Judgments are based; and the language in the Judgments and related orders expressly authorize a grant of attorneys' fees and costs. [Doc. 910 at 8, 10, 12-13, 15.]

## II. ANALYSIS

The Bankruptcy Code defines a "claim" as:

(A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmetered, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Validity of a claim stems from a party's status as a creditor of the debtor, defined by the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A creditor may file a proof of claim, and if executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, such proof of claim constitutes prima facie evidence as to the amount and validity of the claim and is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). If an objection is raised, the Court must determine the amount of any allowed claim as of the petition date, *see* 11 U.S.C. § 502(b), and the objecting party must present evidence rebutting the prima facie proof of claim by refuting at least one allegation that is essential to the legal sufficiency of the claim, after which the burden of proof shifts to the claimant to prove the claim's validity by a preponderance of the evidence. *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (citation omitted).

### A. Postpetition Fees, Costs, or Charges Under § 506(b)

In bankruptcy, secured claims are governed by 11 U.S.C. § 506, with subsection (b) applicable to this contested matter providing:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). As explained by the Supreme Court:

> The relevant phrase in § 506(b) is: "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they

> are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*Ron Pair Enters., Inc.*, 489 U.S. at 241. The parties do not dispute that the Bank is oversecured and that § 506(b) applies in this case. Their disagreement concerns whether § 506(b) authorizes the Bank to include in its claim postpetition expenses, including attorneys' fees.

The bankruptcy court for the Southern District of Florida considered similar facts in *In re Vulpetti*, 182 B.R. 923 (Bankr. S.D. Fla. 1995). The debtor was a guarantor under an agreement that authorized the creditor to recover attorneys' fees and expenses if collection or enforcement of the guaranty became necessary. *Id.* at 925. The creditor obtained a judgment against the debtor and recorded the judgment prepetition, creating judgment liens against the debtor's property under Florida law. *Id.*

The creditor argued to the bankruptcy court that it was entitled to postpetition fees and costs on several alternate grounds, including (1) Florida Statutes Annotated section 57.115; (2) § 506(b) of the Bankruptcy Code; (3) an Eleventh Circuit decision that allowed a successful creditor in a dischargeability action to recover attorneys' fees when an enforceable contract between the creditor and debtor authorized recovery of attorneys' fees; and (4) § 503(b)(3)(D) and (b)(4) of the Bankruptcy Code.[9] *Id.* Examining § 506(b), the court found that "[t]he problem with [the creditor's] argument [wa]s that the 'allowed *secured* claim' must arise from 'the agreement' for § 506(b) to apply." *Id.* at 926. The court held: "If the claim is secured only

---

[9] Here, the Bank raises only § 506(b) as a ground for its postpetition expenses. The Florida statute on post-judgment attorneys' fees allows a court to "award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment credit in connection with execution on a judgment." Fla. Stat. Ann. § 57.115 (1). Although that section might apply here, the Bank did not raise it. Because the statute is permissive, *In re Vulpetti*, 182 B.R. at 926, the Court will not apply it *sua sponte* to either the prepetition or postpetition expenses sought by the Bank.

because of a non-consensual lien, such as the judgment lien in this case, fees are not recoverable under § 506(b)." *Id.*

The only difference between *Vulpetti* and the facts before the Court is that the Underlying Loan Documents here created a voluntary lien in favor of the Bank while the underlying guaranty agreement in *Vulpetti* did not include any security. That distinction makes no difference, however. The reasoning of *Vulpetti* applies equally to the facts here because the Bank has an "allowed secured claim" only because of the nonconsensual judgment lien and not an "agreement under which *such claim* arose."

As the Tenth Circuit Court of Appeals explained in a case in which the lien on property of the bankruptcy estate "was not created by or through the 'agreement' between the creditor or debtor, but by operation of law [through a recorded deficiency judgment]," *In re Gledhill*, 164 F.3d 1338, 1340 (3d Cir. 1999):

> Section 506(b) refers to an "allowed secured claim." We must first identify the "allowed secured claim" which is at issue here. An "allowed secured claim" is simply "an allowed claim that qualifies as a secured claim as provided under section 506(a)." 4 *Collier on Bankruptcy*, ¶ 506.04 [1], at 506–105 (15th ed. 1998). The "allowed secured claim" is the specific claim presented to the bankruptcy court for payment. The Bank directs us to the underlying note and trust deed on the service station, which contained an agreement that attorney fees and costs could be recovered. Those agreements are irrelevant to the Bank's current claim. In accordance with the state court foreclosure judgment, the service station property was sold and the proceeds were applied to reduce the amount owed to the Bank. *See* Utah Code Ann. §§ 78–37–1 & 2. At that point, the Bank's security interest that arose under the note and trust deed was exhausted. Pursuant to Utah law, if a deficiency then exists, a deficiency judgment is entered to reflect the deficiency amount and a lien arises which is enforceable against other real property. *See* Utah Code Ann. § 78–22–1(2). It is the Bank's judgment lien on the Gledhills' remaining property, which essentially consisted only of the Big Rock Candy Mountain property, that is the "allowed secured claim" at issue in these bankruptcy proceedings.

*Id.* at 1340-41.

Simply stated, the text of § 506(b) and cases interpreting the statute make clear that the text in the first clause ("allowed secured claim") governs the meaning of the last clause that allows fees only if a statute or a fee provision is included in the "agreement under which *such claim arose*." 11 U.S.C. § 506(b) (emphasis added); *see Ron Pair Enters.*, 489 U.S. at 241 (stating that "such claim" in § 506(b) "gives one having a secured claim *created* pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement (emphasis added)); *In re Gledhill*, 164 F.3d at 1342 ("[T]he Bank has not directed us to any post-*Ron Pair* decision awarding fees and costs to an oversecured creditor holding a nonconsensual [lien] claim.").

Here, the Bank cited to a decision from the bankruptcy court for the Southern District of Florida in support of its argument that the Underlying Loan Documents provide the authority under § 506(b) for postpetition fees and costs.[10] [Doc. 910 at 11 (citing *In re 6200 NE 2nd Ave., LLC*, 648 B.R. 114 (Bankr. S.D. Fla. 2022).] In that case, however, although the Court did not directly address the issue, the character of the claim as secured arose from mortgages that had resulted in prepetition final judgments of foreclosure, but the foreclosure sales had not yet occurred prepetition. *In re 6200 NE 2nd Ave., LLC*, 648 B.R. at 115. That is, the prepetition judgments were not deficiency judgments but judgments authorizing foreclosure sales, and the secured claim arose not from nonconsensual judgment liens but from the mortgages.

---

[10] The Bank also cites to *In re Howe*, No. 9:19-bk-03218-FMD, 2020 Bankr. LEXIS 2559 (Bankr. M.D. Fla. Mar. 2, 2020). [Doc. 910 at 15.] The *Howe* decision disposed of the debtor's objection to the creditor's proof of claim that included post-judgment, prepetition attorneys' fees for an appeal and collection efforts. Apparently, however, the debtor only objected to the reasonableness of the fees. *Id.* at *4 (describing the objection as "assert[ing] that Creditors' attorney's fees and costs are excessive in light of the actual damages of $6,650.00 awarded to them in the Judgment"). The Court finds *In re Howe* inapposite as to both the prepetition and postpetition fee issues presented here.

The Bankruptcy Appellate Panel of the Tenth Circuit Court of Appeals explained the difference in *Eastman Nat'l Bank v. In re Sun 'N Fun Waterpark, LLC* (*In re Sun 'N Fun Waterpark, LLC*), 408 B.R. 361 (B.A.P. 10th Cir. 2009).  There, because the collateral had not yet been sold at a sheriff's sale, even though a foreclosure decree had been entered, the creditor did not "lose[] its contractual rights under the mortgage to recover fees and costs associated with its post-foreclosure decree collection efforts." *Id.* at 364.  The BAP reversed the bankruptcy court's decision that precluded recovery of postpetition fees and costs under § 506(b). *Id.*  The court distinguished *In re Gledhill*, noting the importance of understanding the "unique factual circumstances" of that case and to recognize that "a foreclosure sale of the secured creditor's collateral had been completed." *Id.* at 367.  That is, in *Gledhill*, the deficiency judgment was recorded, creating a judgment lien, which the creditor "then sought to enforce [prepetition] by executing on additional real property owned by the debtors (*i.e.*, property not subject to the creditor's mortgage). . . . Th[e] claim . . . was based on the deficiency judgment, not the original note and mortgage." *Id.* at 367-68 (citing *In re Gledhill*, 164 F.3d at 1340-41).

Such is the case here.  The Bank's claim is secured in this bankruptcy case solely because it holds prepetition judgment liens from recordation of the Judgments.  Because the character of the Bank's claim as secured arose not from the Underlying Loan Documents but by operation of law, postpetition expenses are not authorized by § 506(b).

### B. Prepetition Expenses and the Merger Doctrine

Debtor also objects to the Bank's request for post-judgment, prepetition fees and expenses, asserting that they are barred by the doctrine of merger. [Doc. 908 at 4-5.]  As a

threshold matter, although Debtor seems to assume that Florida law applies [Doc. 908 at 5], neither party addressed directly the choice-of-law question created because the Underlying Loan Documents include a Tennessee choice-of-law provision but the Judgments were entered in Florida. Because the Judgments were entered in Florida, and Federal Rule of Civil Procedure 69(a)[11] requires that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located," the Court will look primarily to Florida law to examine the merger doctrine.[12]

In 2018, the Florida District Court of Appeal explained the merger doctrine in the context of post-judgment attorneys' fees. *Webber v. D'Agostino*, 251 So. 3d 188 (Fla. Dist. Ct. App. 2018). There, the court acknowledged that the merger doctrine provides "that when a valid and final judgment is rendered in favor of a plaintiff, the original debt or cause of action upon which an adjudication is predicated merges into the final judgment, and, consequently, the cause's independent existence terminates." *Id.* at 191 (quoting *Weston Orlando Park, Inc. v. Fairwinds Credit Union*, 86 So. 3d 1186, 1887 (Fla. Dist. Ct. App. 2012)). The court acknowledged, however, that it had "previously held that a contract providing for a prevailing-party's entitlement to 'all reasonable attorney's fees and costs' was 'broad enough to encompass fees for execution on the judgment.'" *Id.* (quoting *Fed. Auto Ins. Co. v. Bus. Acquisitions Brokerage, Inc.*, 839 So. 2d 767, 767 (Fla. Dist. Ct. App. 2003)). Notably, however, the case on which the *Webber* court relied did not mention merger at all.

---

[11] Rule 69 applies in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7069 and to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c).

[12] Tennessee also recognizes the merger doctrine, *Ward v. Kenner*, 37 S.W. 707, 709 (Tenn. 1896) ("A judgment upon a note executed under the conventional interest law of 1860, bearing ten per cent. per annum until paid, was a merger of the obligation of the note, and properly bore only the same interest as other judgments – six per cent." (citation modified)), but the Court could locate no Tennessee case that addresses the question of post-judgment attorneys' fees in the context of the merger doctrine.

Twenty-seven years before the *Webber* decision, the Florida District Court of Appeal had also addressed the merger issue in the context of post-judgment attorneys' fees. *Fla. Pottery Stores of Panama City, Inc. v. Am. Nat'l Bank*, 578 So. 2d 801 (Fla. Dist. Ct. App. 1991). There, the court held that the trial court's grant of post-judgment attorneys' fees was "facially deficient" because the trial court failed to make specific findings to determine the amount of the fee and because the trial court failed "to separately treat pre- and post-judgment fees." *Id.* at 805. Then, in dictum, the appellate court addressed the merger doctrine stating the general rule that "[a] cause of action merges into the judgment obtained" such that it was "doubtful that the provision [in the note] concerning attorney's fees continued to have effect after the note was reduced to judgment." *Id.* at 806.

Notably, the *Florida Pottery Stores* court discussed the Washington Court of Appeals' decision in *Caine & Weiner v. Barker*, 713 P.2d 1133 (Wash. Ct. App. 1986). *Fla. Pottery Stores*, 578 So. 2d at 806. There, the Washington court noted the "general rule" is that "when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it." *Caine & Weiner*, 713 P.2d at 1134. The court explained: "The merger rule is based in part upon the need to prevent vexatious relitigation of matters that have already passed into judgment as between the parties to the litigation and their successors." *Id.* at 1135 (citation omitted). The Washington court then addressed the exception to the general rule of merger:

> However, despite the general rule that underlying rights and obligations are extinguished by the judgment, the doctrine is designed to promote justice and should not be carried further than that end requires. Therefore, where the original obligation provides for special rights or exemptions, in some circumstances these may be preserved and recognized despite merger.

*Id.* (citations omitted).

Thus, although the *Florida Pottery Stores* court did not apply the exception there, its reliance on the *Caine & Weiner* decision reflects a recognition of the exception. The *Webber* court, in the most recent Florida decision directly on point, seized on that exception:

> Here, the note provided that "[e]ach person liable hereon agrees to pay all costs, including a reasonable attorney's fee, whether suit be brought or not, if, after maturity of this note or default thereunder, *counsel shall be employed to collect this note*." This language is also broad enough to encompass the extended litigation pursued by the borrower and trustee after payment of the judgment. Thus, the merger doctrine does not prevent the note from serving as a basis for the fee award.

*Webber*, 251 So. 3d at 191 (emphasis added) (citation modified).

Here, the Notes used nearly identical language as the above-emphasized portion of the note in *Webber*: "In addition, *if you hire an attorney to collect this note*, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law)." [Doc. 910-1 at 4, 6, 8, 13, 15, 17, 19-20, 22.] If the language of the note in *Webber* was "broad enough to encompass the extended litigation pursued by the borrower and trustee after payment of the judgment" such that the merger doctrine did "not prevent the note from serving as a basis for the fee award," then the language in the Notes here is also broad enough so that the merger doctrine does not bar the Bank's post-judgment (prepetition) expenses.

Thus, the Court finds that the Notes fall within the exception to the merger doctrine as recognized in Florida so that the post-judgment, prepetition fees are not categorically barred by the merger doctrine. Debtor's objection to the prepetition expenses must be overruled, but without prejudice to Debtor objecting on other grounds once the Bank amends Claim No. 15 as explained below.

In *Webber*, the court also rejected the argument that the words "collect this note" allowed fees "only when a party is engaged in collection actions—which could either include the acts necessary to obtain a judgment or the acts necessary to collect a judgment." *Webber*, 251 So. 3d at 191. The *Webber* court found that the post-judgment fees sought by the creditor fell within the note's text authorizing fees to "collect this note." *Id.*

The Bank has provided no detail on the post-judgment expenses that were incurred prepetition. Because Debtor expressly reserved his right to object to the Bank's fees on the basis of reasonableness, the Court will direct the Bank to amend Claim No. 15 to remove the postpetition expenses and provide an explanation for the prepetition, post-judgment expenses included in the claim, including a detail of the attorneys' fees included in the amended proof of claim so that Debtor can evaluate the reasonableness of the fees. Thereafter, Debtor will be allowed thirty days to raise an objection to either the character of the expenses (which may be recovered "to collect on" the Notes) and/or the reasonableness of the expenses.

## II.  CONCLUSION

For the reasons stated herein, the Court finds that 11 U.S.C. § 506(b) does not permit the Bank to recover post-judgment, postpetition expenses on its nonconsensual lien that serves as the basis for its secured claim, and Debtor's objection to the postpetition expenses will be sustained. The Bank, however, is not prohibited by the doctrine of merger from recovering its post-judgment, prepetition expenses so that Debtor's objection to the prepetition expenses will be overruled without prejudice to Debtor objecting to those expenses based on their character and/or on reasonableness grounds. An Order consistent with this Memorandum will be entered.

FILED: September 12, 2025

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE